# EXHIBIT F

## Lincoln Benefit Life Company, Lincoln, Nebraska
### SPECIAL AGENT'S AGREEMENT — APPOINTMENT

**SPECIAL AGENT:**

Name: Joel Jacob    1K6B5

By: _____
(Signature of Agent or Firm Principal)

_____
(Print or Type Name and Title Here)

Date: 3/24/08

**LINCOLN BENEFIT LIFE COMPANY:**

By: Robert W. Birman, Vice President

Contract Effective Date: 3/5/8

**RECRUITING ORGANIZATION:**

Name: Innovative Brokers Corp.

By: _____
(Signature of Agent of Firm Principal)

Herbert Yeibel, CLU
(Print or Type Name and Title Here)

Recruiter's Agent #: 52BC5

For all Special Agents, except those holding a resident license in Georgia, North Carolina, Pennsylvania and Utah, this contract is not deemed to be executed and effective until the Special Agent's first insurance application submitted to Lincoln Benefit Life. For Georgia, North Carolina, Pennsylvania and Utah resident Special Agents, the Contract Effective Date is shown above.

Lincoln Benefit Life Company ("LBL") hereby appoints the individual or entity named above as its SPECIAL AGENT ("SA" or "you") with duties, powers, and obligations as herein set forth, and SA hereby accepts the appointment on the terms and conditions set forth herein. The provisions stated in all supplements are incorporated into and made a part of this Agreement. Effective Date — For all SAs, except those holding a resident license in Georgia, North Carolina, Pennsylvania, and Utah, this Agreement shall become executed and effective upon your submission of an insurance application to LBL and your appointment with LBL is submitted to your resident state. For Georgia, North Carolina, Pennsylvania and Utah resident SAs, this Agreement shall become effective on the date shown above. If any provision of the Agreement is now or shall in the future be in conflict with any applicable law or any valid Department of Insurance ruling or order, it shall be modified to the extent necessary for compliance. This Agreement shall supersede all previous agreements between the parties.

Authority — You are authorized to act as an Agent on behalf of LBL for the purpose of developing and supervising the distribution of LBL's insurance products. Specifically, you are authorized to:

1) Solicit applications for the policies of insurance and annuity contracts written by LBL and approved for marketing.

Responsibilities — You are required to follow certain guidelines while exercising the authority granted under this Agreement. These guidelines include, but are not limited to, the following:

1) For any applications solicited by you, you shall submit such applications when received to LBL. You shall also collect the first premium and transmit all collections immediately to LBL.

2) You shall promptly deliver any policy or contract issued by LBL to owner of the policy or contract. In no event shall delivery take longer than thirty (30) days from the date you receive the policy or contract. In the event delivery will take longer than thirty (30) days, you are required to notify LBL.

3) You shall make reasonable effort to preserve business issued by LBL and to maintain in force policies issued by LBL.

4) You shall at all times comply with the rules and regulations of LBL pertaining to underwriting practices, acceptance of risks, delivery of policies, and all other areas of conduct for LBL's business.

5) Licensing of agents shall be in compliance with statutory and regulatory requirements of the Departments of Insurance or other regulatory agencies and in accordance with the standards and procedures established by LBL. Neither you nor any of your agents shall solicit business for LBL until you are notified in writing by LBL that you or they are qualified to write business for LBL.

6) You shall notify LBL immediately upon becoming aware of any misdemeanor or felony criminal convictions (excluding minor traffic citations) relating to you, your employees, or any agent licensed under you and appointed with LBL.

LBL-2389-SA, 03/07

1

7) Comply with LBL's policies and procedures concerning the replacement of life insurance policies and annuity contracts. A replacement occurs whenever an existing policy or contract is terminated, converted, or otherwise changed in value. For any transaction involving a replacement, LBL requires you to:

   a) recommend the replacement only when replacement is in the best interest of the customer;

   b) fully disclose any and all relevant information to the customer, including: (i) comparing old and new premium expenses, surrender charges, cash values, and death benefits; (ii) any specific loss of cash value or policy value related to surrendering the existing policy; (iii) all guaranteed and maximum values of both policies; (iv) whether a new contestability period and/or suicide clause will start under the new policy; and (v) whether the customer will have to resubmit to underwriting to purchase the new policy;

   c) provide state-required replacement notices to customers on the same day the application is taken and indicate on the application that the transaction involves the full or partial replacement of an existing policy; and

   d) never recommend that a customer cancel an existing policy until a new policy is in force, and the customer has determined that the new policy is acceptable.

8) Adhere to LBL's rules and regulations concerning ethical market conduct, which require that you:

   a) carefully evaluate the insurance needs and financial objectives of your clients, and use sales tools (e.g., policy illustrations and sales brochures) to determine that the insurance or annuity you are proposing meets these needs;

   b) maintain a current license and valid appointment in all states in which you promote the sale of LBL products to customers and keep current of changes in insurance laws and regulations by reviewing the bulletins and newsletters published by the State Departments of Insurance and LBL;

   c) comply with LBL's policies concerning replacements, and refrain from providing false or misleading information about a competitor or competing product or otherwise making disparaging remarks about a competitor;

   d) submit, prior to use, all advertising materials intended to promote the sale of LBL products to LBL for approval;

   e) immediately report to LBL any customer complaints, whether written or oral, and assist LBL in resolving the complaint to the satisfaction of all parties; and

   f) communicate these standards to any agents or officer personnel that you directly supervise and request their agreement to be bound by these conditions as well.

9) During the term of this Agreement, you will maintain errors and omissions insurance coverage in an amount satisfactory to LBL underwritten by an insurer satisfactory to LBL. Coverage must insure against any negligent act, error, or omission by you or any person employed by you in the rendering of any services related to this Agreement. You will provide proof of such coverage upon our request.

10) You shall adhere to LBL's policies and procedures related to maintaining the privacy of our applicants' and customers' personal information. You are prohibited from disclosing and using an LBL applicant's or customer's nonpublic personal information other than to carry out the purposes for which the LBL applicant or customer disclosed the information.

**Independent Contractor** – The relationship you have with LBL under this Agreement is that of an independent contractor. Neither you nor your employees or agents shall be deemed to be the employee or servant of LBL.

None of the benefits provided by LBL to its employees, including, but not limited to, workers compensation insurance and unemployment insurance, are available to you, your employees, and agents.

**Limitation of Authority** – You shall not possess or exercise any authority on behalf of LBL other than expressly conferred by this Agreement. Activities that you are specifically not authorized to perform on behalf of LBL include, but are not limited to:

1) Making, altering, or discharging any contract.

2) Incurring any indebtedness or liability on behalf of LBL.

3) Expending, or contracting for the expenditure of, any funds of LBL.

4) Extending the time for payment of any premium, binding LBL to the reinstatement of any terminated policy, or accepting notes for payment of premiums.

5) Waiving or modifying any terms, conditions, or limitations of any policy.

6) Adjusting, settling, or committing LBL to any action regarding any claim.

7) Issuing, using, or circulating any advertisement or literature referencing LBL unless the advertisement or literature has first been approved in writing by LBL.

8) Entering into any legal proceedings on behalf of LBL in connection with any matters pertaining to LBL's business.

9) Delivering any policy issued by LBL prior to the settlement by the applicant of the first premium or required funding for the policy or contract.

10) Delivering any policy when you or your agents have knowledge of any impairment of the applicant's health either not disclosed on the application or that occurred subsequent to the securing of the application.

Records -- All books, records, application forms, and material furnished by LBL pertaining to the solicitation of applications for insurance hereunder shall be the property of LBL and shall be returned to LBL upon termination of this Agreement. All other records pertaining to your performance under this agreement shall be open to inspection by LBL or by the Department of Insurance (as required by law) at all times.

Expenses -- You shall pay all expenses of every nature incurred in connection with the conduct of your business, and LBL shall not be liable in any way therefore.

Taxes -- You shall assume full responsibility for, and indemnify LBL against, any liability in connection with the payment of all federal, state, and local taxes or contributions imposed or required under unemployment insurance, social security, income tax, and related laws with respect to compensation received under this Agreement by you.

Fiscal Responsibility -- You shall immediately pay to LBL all monies received by you or your agents on all applications obtained and policies issued. All such funds shall be segregated by you and held by you in trust. Such funds shall not be used by you for any purpose.

Compensation -- You shall be compensated solely by the Recruiter. No compensation will be paid to you by LBL.

Non-Public Personal Financial Information --
(Requirements pursuant to the Gramm-Leach-Bliley Act)
You agree to protect any confidential information of LBL customers that is accessible by you. Confidential Information includes, but is not limited to, any nonpublic personal information about LBL's customers or potential customers, regardless of whether it is personally identifiable or anonymous information. Such nonpublic personal information includes, but is not limited to:

1) Application information, such as assets and income;

2) Identifying information, such as name, address and social security number;

3) Transaction information such as policy activity; contract balances, purchases and withdrawals; and

4) Information from other sources, such as credit reports.

You agree, now and at all times in the future, not to use or disclose Confidential Information to any person or entity, other than to carry out the purposes for which the LBL applicant or customer disclosed the information, or as necessary to carry out the lawful business purposes of this Agreement, or as otherwise allowed by law or regulation. Use or disclosure of Confidential Information shall comply with federal and state privacy laws, rules and regulations. You agree to adhere to LBL's policies and procedures related to maintaining the privacy and protection of applicants' and customers' Confidential Information.

You shall establish policies and procedures to protect such Confidential Information in accordance with commercially reasonable standards and at a minimum using the same degree of care, but no less than a reasonable degree of care, to prevent the unauthorized use, disclosure or duplication of such Confidential Information as LBL uses to protect its own confidential information. You will implement appropriate measures to:

1) Ensure the security and confidentiality of LBL's customer information;

2) Protect against any anticipated threats or hazards to the security or integrity of such information; and

3) Protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any customer.

Confidential Information shall be returned to LBL, or destroyed upon LBL's request, once the services contemplated by this Agreement have been completed, or upon termination of this Agreement. In addition, you shall not be entitled to use such Confidential Information for any purpose thereafter.

Further, you agree that any violation of this section shall be a material breach of this Agreement and shall entitle LBL to immediately terminate this Agreement without penalty upon notice to you. You agree to permit LBL to audit your compliance with this section, and with all applicable laws, rules and regulations, during regular business hours upon reasonable notice to you. The provisions of this section shall survive any termination of this Agreement.

Assignment -- No assignment of this Agreement or any interest therein shall be valid unless LBL consents in writing.

Termination -- Either party may terminate this Agreement at any time by giving written notice. Notice may be mailed or delivered to the last known address of the other party. If you reside in, or are licensed in, Arkansas, Florida, Illinois, Missouri and/or Oregon, you hereby agree to waive any advance notice of termination and agree that termination will be effective immediately upon delivery of written notice. Upon termination, you shall in no manner thereafter act for LBL and shall promptly account for and remit to LBL any monies then held for it. On demand, you shall turn over to LBL all undelivered policies, ratebooks, other records, materials, and properties pertaining to your agency business. Your right to any commission or any other thing of value shall cease if you: commit any act that injures the business or reputation of LBL; fail to account for and remit promptly any monies collected by you for LBL; or, withhold any policies, money or other property belonging or returnable to LBL.

Law Applicable -- The execution and performance of this Agreement involves transacting business in the State of Nebraska by you with LBL. This Agreement shall be governed by and construed according to the laws of the State of Nebraska. All actions with respect to this Agreement shall be brought in a court of competent jurisdiction in Lancaster County, Nebraska.

PROTECTED HEALTH INFORMATION
(Requirements pursuant to HIPAA)

1) Definitions. The following definitions relate to this section only.
   a) Business Associate. "Business Associate" means a person who performs, or assists in the performance of, a function or activity involving the use or disclosure of individually identifiable health information, or any other function or activity regulated by the Privacy Rule.
   b) Individual. "Individual" means the person who is the subject of protected health information, or that person's personal representative in his or her fiduciary capacity.
   c) Individually Identifiable Health Information shall mean information that is a subset of health information, including demographic information collected from an individual, and (i) is created or received by a health care provider, health plan, health care clearinghouse (as those terms are defined in the Privacy Rule), or employer; and (ii) relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual; and (a) identifies the individual, or (b) with respect to which there is a reasonable basis to believe the information can be used to identify the individual.
   d) Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E, as in effect or as amended.
   e) Protected Health Information. "Protected Health Information" or "PHI" shall mean Individually Identifiable Health Information transmitted or maintained in any form or medium that you create or receive from or on behalf of LBL in the course of fulfilling its obligations under this Agreement. "PHI" shall not include (i) education records covered by the Family Educational Rights and Privacy Act, as amended, 20 U.S.C. §1232g, and (ii) records described in 20 U.S.C. §1232g(a)(4)(B)(iv).
   f) Required By Law. "Required By Law" means a mandate contained in law that compels a covered entity to make a use or disclosure of PHI and that is enforceable in a court of law.
   g) Secretary. "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.
   h) Security Incident. "Security Incident" shall mean the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an information system.
   i) Security Rule. "Security Rule" shall mean the Health Insurance Reform: Security Standards for the protection of Electronic PHI at 45 CFR Part 160 and Part 164, Subpart C, as in effect or as amended.

2) Obligations and Activities
   a) You agree to comply with the policies and procedures of LBL with respect to PHI.
   b) You agree to not use or disclose PHI other than as permitted or required by the Agreement or as Required By Law.
   c) You agree to use appropriate safeguards, including safeguards for the protection of electronic PHI, as provided in the Security Rule (45 C.F.R. Parts 160 and 164), to prevent use or disclosure of PHI other than as provided for by this Agreement;
   d) You agree to mitigate, to the extent practicable, any harmful effect that is known to you of a use or disclosure of PHI by you in violation of the requirements of this Agreement.
   e) You agree to report to LBL any use or disclosure of PHI not authorized or provided for by this Agreement and any Security Incident within 5 business days of becoming aware of the use, disclosure or Security Incident.
   f) You agree to ensure that any person or entity to whom you provide PHI received from LBL or the Individual, or created or received by you on behalf of LBL, agrees to the same restrictions and conditions that apply through this Agreement to you with respect to such information.
   g) You agree to make internal practices, books, and records, including policies and procedures and PHI, relating to the use and disclosure of PHI received from, or created or received by you on behalf of, LBL, available to LBL, or to the Secretary, within ten (10) days of such request, or as designated by the Secretary, for purposes of the Secretary determining LBL's compliance with the Privacy Rule.
   h) You shall keep a record of disclosures of PHI and agree to make information regarding disclosures of PHI available to LBL within fifteen (15) days of a request by LBL. You shall provide, at a minimum, the following information: (i) the date of disclosure; (ii) the name of the entity or person who received the PHI, and the address of such entity or person, if known; (iii) a brief description of the PHI disclosed; (iv) a brief statement regarding the purpose and explanation of the basis of such disclosure and (v) the names of all Individuals whose PHI was disclosed.
   i) Within fifteen (15) business days of a request by LBL, you agree to comply with LBL's request to accommodate an Individual's access to his/her PHI. In the event an Individual contacts you directly about access to PHI, you will not provide access to the Individual but shall forward such request to LBL within five (5) business days of such contact.

LBL-2389-SA, 06/08

4

j) Within fifteen (15) business days of a request by LBL, you agree to comply with LBL's request to make amendments to PHI. You shall promptly incorporate any such amendments into the PHI. In the event an individual contacts you directly about making amendments to PHI, you will not make any amendments to the individual's PHI but shall forward such request to LBL within five (5) business days of such contact.

k) You agree to notify LBL within five (5) business days of your receipt of any request, subpoena, or judicial or administrative order to disclose PHI. To the extent that LBL decides to assume responsibility for challenging the validity of such request, subpoena or order, you agree to cooperate fully with LBL in such challenge.

l) If a customer terminates his or her relationship with you, or the customer's policy is not renewed or is canceled, you shall return to LBL, or destroy, all PHI received from LBL, or created or received by you from the customer. This provision shall apply to PHI that is in the possession of your employees, subcontractors, agents or associates. You shall retain no copies of the PHI.

3) Permitted Uses and Disclosures

General Use and Disclosure Provisions

Except as otherwise limited in this Agreement, you may use or disclose PHI to perform functions, activities, or services for, or on behalf of, LBL as specified in the Agreement provided that such use or disclosure would not violate the Privacy Rule if done by LBL.

Specific Use and Disclosure Provisions

a) Except as otherwise limited in this Agreement, you may use PHI for the proper management and administration of your business or to carry out your legal responsibilities.

b) Except as otherwise limited in this Agreement, you may disclose PHI for the proper management and administration of your business, provided that disclosures are Required By Law, or you obtain reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required By Law or for the purpose for which it was disclosed to the person, and the person notifies you of any instances of which it is aware in which the confidentiality of the information has been breached.

c) You may use PHI to report violations of law to LBL and to appropriate Federal and State authorities, where consistent with the Privacy Rule.

d) Use PHI to provide Data Aggregation services to LBL as permitted by 42 CFR 164.504(e)(2)(i)(B).

4) Obligations of LBL

To the extent that your use or disclosure of PHI may be affected, LBL shall notify you of:

LBL-2389-SA, 06/08

a) Any limitation(s) in LBL's notice of privacy practices;

b) Any changes in, or revocation of, permission by Individual to use or disclose PHI;

c) Any restriction to the use or disclosure of PHI that LBL has agreed to.

5) Termination

a) Termination for Cause. Upon LBL's knowledge of a material breach or violation of the requirements imposed by the Privacy or Security Rules by you, LBL may either:

 i. Provide an opportunity for you to cure the breach or end the violation and terminate this Agreement if you do not cure the breach or end the violation within the time specified by LBL;

 ii. Immediately terminate this Agreement if you have committed a material breach or violated the Privacy or Security Rules and cure is not possible; or

 iii. If neither termination nor cure are feasible, LBL shall report the violation to the Secretary.

b) Effect of Termination.

 i. Except as provided in paragraph (2) of this section, upon termination of this Agreement, for any reason, you shall return or destroy all PHI received from LBL, or created or received by you on behalf of LBL. This provision shall apply to PHI that is in the possession of your employees, subcontractors, agents or associates. You shall retain no copies of the PHI.

 ii. In the event that you determine that returning or destroying the PHI is infeasible, you shall provide to LBL notification of the conditions that make return or destruction infeasible. Upon written notice by you to LBL that return or destruction of PHI is infeasible, you shall extend the protections of this Agreement to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as you maintain such PHI.

6) Indemnification.

You hereby agree to indemnify and hold LBL, its employees, officers and directors harmless from and against any and all liability, payment, loss, cost, expense (including reasonable attorneys' fees and costs), or penalty incurred by LBL, its employees, officers or directors in connection with any claim, suit, or action asserted against such entity or person resulting from the failure to fulfill any obligation of this Agreement by you or your employees, agents or subcontractors.

5

7) Safeguards

Business Associate shall use appropriate safeguards, including safeguards for the protection of electronic PHI, as provided in the Security Standards (45 C.F.R. Parts 160 and 104), to prevent use or disclosure of PHI in breach of this Agreement. Business Associate shall provide LBL with information concerning such safeguards upon LBL's request, and shall, upon reasonable request, give LBL access for inspection and copying to Business Associate's facilities used for the maintenance or processing of PHI, and to its books, records, practices, policies and procedures concerning the use and disclosure of PHI, for purpose of determining Business Associate's compliance with this Agreement. Business Associate shall supply all assistance reasonably necessary so that the LBL's auditors may complete any such inspection.

8) Injunction

You hereby agree that LBL will suffer irreparable damage upon your breach of your obligations under the privacy or security provisions of this Agreement, and that such damages shall be difficult to quantify. You hereby agree that LBL may file, and you will not contest, an action for an injunction to enforce such provisions against you, in addition to any other remedy LBL may have.

9) Survival

Your respective rights and obligations relating to the requirements of the privacy and security provisions of this Agreement and PHI shall survive the termination of this Agreement.

10) Interpretation

Any ambiguity in this Agreement shall be resolved to permit LBL to comply with the Privacy Rule, Security Rule or Standards for Electronic Transactions.

Lincoln Benefit Life Company, Lincoln, Nebraska
AMENDMENT TO AGENT APPOINTMENT AGREEMENT

The terms and provisions of this Amendment are incorporated in and shall supersede any conflicting or inconsistent terms and provisions of the Agreement to which this Amendment is attached, including all exhibits or other attachments thereto and all documents incorporated therein by reference, effective as of September 1, 2008. This provision shall be deemed accepted by the person appointed in the Agreement if such person submits any application, premium or Individually Identifiable Health Information on or after September 1, 2008, or is paid a commission by Lincoln Benefit Life Company on or after September 1, 2008. In order to comply with federal law related to the disclosure of nonpublic personal information and protected health information of consumers and customers, the section titled Protected Health Information is being added:

**PROTECTED HEALTH INFORMATION**
(Requirements pursuant to HIPAA)

1) Definitions. The following definitions relate to this section only.

   a) Business Associate. "Business Associate" means a person who performs, or assists in the performance of, a function or activity involving the use or disclosure of individually identifiable health information, or any other function or activity regulated by the Privacy Rule.

   b) Individual. "Individual" means the person who is the subject of protected health information, or that person's personal representative in his or her fiduciary capacity.

   c) Individually Identifiable Health Information shall mean information that is a subset of health information, including demographic information collected from an individual, and (i) is created or received by a health care provider, health plan, health care clearinghouse (as those terms are defined in the Privacy Rule), or employer; and (ii) relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual; and (a) identifies the individual, or (b) with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

   d) Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E, as in effect or as amended.

   e) Protected Health Information. "Protected Health Information" or "PHI" shall mean Individually Identifiable Health Information transmitted or maintained in any form or medium that you create or receive from or on behalf of LBL in the course of fulfilling its obligations under this Agreement. "PHI" shall not include (i) education records covered by the Family Educational Rights and Privacy Act, as amended, 20 U.S.C. §1232g, and (ii) records described in 20 U.S.C. §1232g(a)(4)(B)(iv).

   f) Required By Law. "Required By Law" means a mandate contained in law that compels a covered entity to make a use or disclosure of PHI and that is enforceable in a court of law.

   g) Secretary. "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

   h) Security Incident. "Security Incident" shall mean the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an information system.

   i) Security Rule. "Security Rule" shall mean the Health Insurance Reform: Security Standards for the protection of Electronic PHI at 45 CFR Part 160 and Part 164, Subpart C, as in effect or as amended.

2) Obligations and Activities

   a) You agree to comply with the policies and procedures of LBL with respect to PHI.

   b) You agree to not use or disclose PHI other than as permitted or required by the Agreement or as Required By Law.

LBL-6439, Rev. 06/08                                1

c) You agree to use appropriate safeguards, including safeguards for the protection of electronic PHI, as provided in the Security Rule (45 C.F.R. Parts 160 and 164), to prevent use or disclosure of PHI other than as provided for by this Agreement;

d) You agree to mitigate, to the extent practicable, any harmful effect that is known to you of a use or disclosure of PHI by you in violation of the requirements of this Agreement.

e) You agree to report to LBL any use or disclosure of PHI not authorized or provided for by this Agreement and any Security Incident within 5 business days of becoming aware of the use, disclosure or Security Incident.

f) You agree to ensure that any person or entity to whom you provide PHI received from LBL or the Individual, or created or received by you on behalf of LBL, agrees to the same restrictions and conditions that apply through this Agreement to you with respect to such information.

g) You agree to make internal practices, books, and records, including policies and procedures and PHI, relating to the use and disclosure of PHI received from, or created or received by you on behalf of, LBL, available to LBL, or to the Secretary, within ten (10) days of such request, or as designated by the Secretary, for purposes of the Secretary determining LBL's compliance with the Privacy Rule.

h) You shall keep a record of disclosures of PHI and agree to make information regarding disclosures of PHI available to LBL within fifteen (15) days of a request by LBL. You shall provide, at a minimum, the following information: (i) the date of disclosure; (ii) the name of the entity or person who received the PHI, and the address of such entity or person, if known; (iii) a brief description of the PHI disclosed; (iv) a brief statement regarding the purpose and explanation of the basis of such disclosure and (v) the names of all Individuals whose PHI was disclosed.

i) Within fifteen (15) business days of a request by LBL, you agree to comply with LBL's request to accommodate an Individual's access to his/her PHI. In the event an Individual contacts you directly about access to PHI, you will not provide access to the Individual but shall forward such request to LBL within five (5) business days of such contact.

j) Within fifteen (15) business days of a request by LBL, you agree to comply with LBL's request to make amendments to PHI. You shall promptly incorporate any such amendments into the PHI. In the event an individual contacts you directly about making amendments to PHI, you will not make any amendments to the individual's PHI but shall forward such request to LBL within five (5) business days of such contact.

k) You agree to notify LBL within five (5) business days of your receipt of any request, subpoena, or judicial or administrative order to disclose PHI. To the extent that LBL decides to assume responsibility for challenging the validity of such request, subpoena or order, you agree to cooperate fully with LBL in such challenge.

l) If a customer terminates his or her relationship with you, or the customer's policy is not renewed or is canceled, you shall return to LBL, or destroy, all PHI received from LBL, or created or received by you from the customer. This provision shall apply to PHI that is in the possession of your employees, subcontractors, agents or associates. You shall retain no copies of the PHI.

3) Permitted Uses and Disclosures

General Use and Disclosure Provisions

Except as otherwise limited in this Agreement, you may use or disclose PHI to perform functions, activities, or services for, or on behalf of, LBL as specified in the Agreement provided that such use or disclosure would not violate the Privacy Rule if done by LBL.

Specific Use and Disclosure Provisions

a) Except as otherwise limited in this Agreement, you may use PHI for the proper management and administration of your business or to carry out your legal responsibilities.

LBL-6439, Rev. 06/08                    2

b) Except as otherwise limited in this Agreement, you may disclose PHI for the proper management and administration of your business, provided that disclosures are Required By Law, or you obtain reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required By Law or for the purpose for which it was disclosed to the person, and the person notifies you of any instances of which it is aware in which the confidentiality of the information has been breached.

c) You may use PHI to report violations of law to LBL and to appropriate Federal and State authorities, where consistent with the Privacy Rule.

d) Use PHI to provide Data Aggregation services to LBL as permitted by 42 CFR 164.504(e)(2)(i)(B).

4) Obligations of LBL

To the extent that your use or disclosure of PHI may be affected, LBL shall notify you of:

a) Any limitation(s) in LBL's notice of privacy practices;

b) Any changes in, or revocation of, permission by Individual to use or disclose PHI;

c) Any restriction to the use or disclosure of PHI that LBL has agreed to.

5) Termination

a) Termination for Cause. Upon LBL's knowledge of a material breach or violation of the requirements imposed by the Privacy or Security Rules by you, LBL may either:

   i. Provide an opportunity for you to cure the breach or end the violation and terminate this Agreement if you do not cure the breach or end the violation within the time specified by LBL;

   ii. Immediately terminate this Agreement if you have committed a material breach or violated the Privacy or Security Rules and cure is not possible; or

   iii. If neither termination nor cure are feasible, LBL shall report the violation to the Secretary.

b) Effect of Termination.

   i. Except as provided in paragraph (2) of this section, upon termination of this Agreement, for any reason, you shall return or destroy all PHI received from LBL, or created or received by you on behalf of LBL. This provision shall apply to PHI that is in the possession of your employees, subcontractors, agents or associates. You shall retain no copies of the PHI.

   ii. In the event that you determine that returning or destroying the PHI is infeasible, you shall provide to LBL notification of the conditions that make return or destruction infeasible. Upon written notice by you to LBL that return or destruction of PHI is infeasible, you shall extend the protections of this Agreement to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as you maintain such PHI.

6) Indemnification.

You hereby agree to indemnify and hold LBL, its employees, officers and directors harmless from and against any and all liability, payment, loss, cost, expense (including reasonable attorneys' fees and costs), or penalty incurred by LBL, its employees, officers or directors in connection with any claim, suit, or action asserted against such entity or person resulting from the failure to fulfill any obligation of this Agreement by you or your employees, agents or subcontractors.

7) Safeguards

Business Associate shall use appropriate safeguards, including safeguards for the protection of electronic PHI, as provided in the Security Standards (45 C.F.R. Parts 160 and 104), to prevent use or disclosure of PHI in breach of this Agreement. Business Associate shall provide LBL with information concerning such safeguards upon LBL's request, and shall, upon reasonable request, give LBL access for inspection and copying to Business Associate's facilities used for the maintenance or processing of PHI, and to its books, records,

LBL-6439, Rev. 06/08                            3

practices, policies and procedures concerning the use and disclosure of PHI, for purpose of determining Business Associate's compliance with this Agreement. Business Associate shall supply all assistance reasonably necessary so that the LBL's auditors may complete any such inspection.

8) Injunction

You hereby agree that LBL will suffer irreparable damage upon your breach of your obligations under the privacy or security provisions of this Agreement, and that such damages shall be difficult to quantify. You hereby agree that LBL may file, and you will not contest, an action for an injunction to enforce such provisions against you, in addition to any other remedy LBL may have.

9) Survival

Your respective rights and obligations relating to the requirements of the privacy and security provisions of this Agreement and PHI shall survive the termination of this Agreement.

10) Interpretation

Any ambiguity in this Agreement shall be resolved to permit LBL to comply with the Privacy Rule, Security Rule or Standards for Electronic Transactions.

LINCOLN BENEFIT LIFE COMPANY:

By: *[signature]*   Robert W. Birman, Vice President

Current Date:    June 1, 2008
Effective Date: September 1, 2008

LBL-6439, Rev. 06/08                                4